UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEJAS CASING LTD., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:08-CV-527 |
| | § | |
| IPSCO TUBULARS INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Plaintiff Tejas Casing, Ltd.'s ("Tejas") motion to amend fact findings and to alter or amend final judgment. Doc. 253. Tejas contends that the Court made a manifest error in its findings of fact (Doc. 223) when it included 473 tons of product IPSCO Tubulars, Inc. ("IPSCO") delivered to Tejas in January, 2007 in the final damages calculation. IPSCO has filed a response in which it argues that the Court properly included the January tonnage in the damages calculation and that Tejas' motion is contrary to positions it previously has taken before this Court. Doc. 255.

In its findings of fact, the Court stated that "Tejas Casing, Ltd. owes IPSCO Tubulars Inc. shortfall fees in the amount of $197,240.00 for the 4,931 tons of product delivered to Tejas Casing, Ltd by IPSCO Tubulars Inc. that Tejas Casing, Ltd. failed to process timely before the January 30, 2007 cancellation of the contract." Doc. 223 at 1. Tejas states that "[t]he 4,931 tons of products that the Court made the basis of this finding appears to include 473 tons of products delivered to Tejas during the month of January 2007." Doc. 253 at 2. Because "the 473 tons delivered in January 2007 had not been at Tejas for more than 30 days [by the January 30, 2007 termination date], no Shortfall Fee for late processing could have accrued for these products." *Id.* The Court disagrees.

Before IPSCO terminated the contract on January 30, Tejas incurred an obligation to treat, within thirty days, the 473 tons of product delivered in January. Tejas thus incurred the obligation prior to the contract termination and the subsequent termination cannot vitiate that obligation. Tejas acknowledged as much in its previous submissions to this Court. In its opposition to IPSCO's answers to the Court's special interrogatories, Tejas stated that "if the Agreement were terminated as of January 30, 2007, as the Court has ruled, then Tejas would have had no contractual obligation to process the products delivered thereafter, and could not be deemed to have incurred any Shortfall Fee liability based on the actual timing of its processing of those products." Doc. 214 at 2. On that basis, Tejas argued that the damages "should be reduced to **$197,240.00,**" an amount that reflected shortfall fees for products delivered in January. *Id.* Nevertheless, Tejas now contends that even that amount overstates its liability and that it should not be held liable for failure to treat product IPSCO delivered no more than thirty days prior to termination.

The clear terms of the contract, however, clearly apportion this risk to Tejas. The contract states that "[n]o termination of this Agreement pursuant to this Section 4.2 [Termination for Cause] shall relieve the breaching party of any liability it may have to the nonbreaching party." Doc. 32-1 at 5-6. Pursuant to the terms of the contract, Tejas incurred a liability to treat within thirty days the product IPSCO delivered in January. The contract clearly holds Tejas to that obligation in the event of termination.

Contrary to Tejas' argument, the Court's finding that IPSCO owes no shortfall fees for the contract quarter beginning in January 2007 is consistent with this result. The contract required IPSCO to deliver 3000 tons of products in each quarter and provided for a shortfall fee in the event IPSCO delivered less than that amount. *See id.* Because IPSCO terminated the

contract before the end of the quarter, it is impossible to determine whether IPSCO delivered, or would have delivered, 3000 tons within that quarter. Moreover, IPSCO's failure to deliver any amount in January cannot give rise to liability for failure to deliver sufficient tonnage within that quarter. In contrast, the contract required Tejas to perform within thirty days. That thirty day period began to run on Tejas' receipt of IPSCO's product and, under the clear terms of the contract, continued to run despite IPSCO's subsequent termination. The disparate result is not the result of the Court's error but rather the parties' allocation of risk when they drafted the contract.

The Court nevertheless notes the ambiguity in its ruling that may have created the current confusion. In its findings of fact, the Court determined that "Tejas Casing, Ltd. owes IPSCO Tubulars Inc. shortfall fees in the amount of $197,240.00 for the 4,931 tons of product delivered to Tejas Casing, Ltd by IPSCO Tubulars Inc. that Tejas Casing, Ltd. failed to process timely before the January 30, 2007 cancellation of the contract." Doc. 223 at 1. Lest there be any confusion, the Court clarifies that Tejas Casing, Ltd. owes IPSCO Tubulars Inc. shortfall fees in the amount of $197,240.00 for the 4,931 tons of product delivered to Tejas Casing, Ltd by IPSCO Tubulars Inc. before the January 30, 2007 cancellation of the contract that Tejas Casing, Ltd. failed to process timely. This clarification is consistent with the language of the contract, the facts in this case, and the Court's previous orders.

The Court therefore

**ORDERS** that Plaintiff Tejas Casing, Ltd.'s motion to amend fact findings and to alter or amend final judgment (Doc. 253) is DENIED.

SIGNED at Houston, Texas, this 9th day of July, 2012.

                                                MELINDA HARMON
                                   UNITED STATES DISTRICT JUDGE